ORDERED.

Dated: September 07, 2010

_____
EILEEN W. HOLLOWELL
U.S. Bankruptcy Judge
_____

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>WHETSTONE DEVELOPMENT COMPANY,<br><br>    Debtor.<br><br>NATIONAL BANK OF ARIZONA, a national banking association,<br><br>    Plaintiff,<br><br>vs.<br><br>WHETSTONE DEVELOPMENT COMPANY, an Arizona corporation; and ERNEST L. GRAVES and MARY G. GRAVES, husband and wife,<br><br>    Defendants. | Chapter 11<br><br>Case No. 4:09-bk-10701-EWH<br><br><br><br>Adv. No. 4:09-00913-EWH<br><br><br><br><br><br>**MEMORANDUM DECISION ON MOTION FOR SUMMARY JUDGMENT REGARDING ENFORCEMENT AND AMOUNT OF GUARANTY** |

**I. INTRODUCTION**

Guarantors seek to avoid immediate liability on their guaranty, but such a result is inconsistent with the terms of the agreement and unsupported by Arizona law. Accordingly, summary judgment will be awarded to the Plaintiff.

## II. **FACTUAL AND PROCEDURAL HISTORY**

In February 2005, Ernest and Mary Graves ("Graves") executed a Repayment Guaranty ("Guaranty") in conjunction with an $8.3 million construction, acquisition and development loan ("Loan") made to Whetstone Development, Inc. ("Whetstone") by National Bank of Arizona ("National Bank"). The Loan was made as part of Whetstone's development of a master planned community in Benson, Arizona and was secured by the real property to be developed and other assets related to the construction of the master planned community ("Whetstone Assets"). Payments on the Loan were to be monthly interest only with a final balloon payment ("Balloon") due on the maturity date, which was originally February 2, 2007. The Loan provided for a variable rate of interest, an 18% default interest rate and assessment of a 10% late fee on "any payment of interest and/or principal" not received when due ("Late Fee").[1] The Loan permitted National Bank to advance the monthly interest payments from the Loan proceeds.

The Loan was the subject of several modifications, extension and forbearance agreements, all of which were made with the Graves' knowledge. The last forbearance agreement expired in early November 2008. In January 2009, National Bank notified Whetstone and the Graves that the entire $9+ million balance of the Loan was due, that interest was accruing at the default rate and that the Late Fee was being assessed against all past due payments, including the Balloon ("Declaration of Default").

In February 2009, National Bank filed suit against the Graves on the Guaranty ("Guaranty Suit") and also filed a motion for partial summary judgement ("MPSJ")

---

[1] Exhibit 2, Secured Promissory Note, paragraph 6(b). (All exhibit numbers refer to exhibits admitted into evidence at 8/23/2010 evidentiary hearing.)

2

seeking a determination that the Graves were liable on the Guaranty and that, due to the Declaration of Default, the Graves were in default on that liability.

In May 2009, Whetstone filed for Chapter 11 relief. The Graves removed the Guaranty Suit to this court in August 2009. In their opposition to the MPSJ, the Graves did not contest their liability or breach of the Guaranty, but asserted that National Bank could not seek a judgment on the Guaranty without first: (1) foreclosing its security interest on the Whetstone Assets; or (2) waiving its security interest in the Whetstone Assets. The summary judgment proceeding was continued from time to time by agreement of the parties.

In October 2009, Whetstone began making monthly interest payments on the Loan. Whetstone and National Bank entered into stipulations, which permitted Whetstone to sell lots during the course of its Chapter 11 case. The parties also agreed that the amount of Whetstone's secured claim was $6,825,000.

Nevertheless, National Bank opposed confirmation of Whetstone's Plan of Reorganization ("Plan"). A contested evidentiary confirmation hearing and oral argument on the MPSJ were held on May 10, 2010. At that hearing, the court ruled that the Plan could be confirmed if Whetstone made certain modifications regarding the interest rate payable on National Bank's secured claim and made certain "curtailment" payments every six months. The court set a deadline for Whetstone to file new *pro formas* based on the court required modifications and to file a proposed confirmation order.

At the May 10, 2010 hearing, the court also granted National Bank's MPSJ on the issue of the Graves' liability on the Guaranty, but made no determination of the

3

amount of their liability. On May 11, 2010, National Bank lodged an order granting it partial summary judgment on the Guaranty. The Graves objected to the proposed order. The Graves also moved for reconsideration of the court's ruling ("Motion for Reconsideration"), again urging the court to hold that National Bank had to elect to either waive its security interest in the Whetstone Assets or foreclose on those assets before enforcing the Guaranty. The Graves also contested National Bank's assessment of default interest and the Late Fee in its Declaration of Default. In National Bank's response to the Motion for Reconsideration, it agreed to credit the amount of its secured claim against the amount of any judgment on the Guaranty.

A hearing was held on June 29, 2010 on the Motion for Reconsideration, along with a show cause hearing regarding the failure of Whetstone to timely file the new *pro formas* required by the court at the May 10, 2010 hearing. Prior to the hearing, Whetstone filed new *pro formas* and indicated it wished to confirm the Plan. On June 29, 2010, an order was entered confirming the Plan ("Confirmation Order"). The Confirmation Order provided that sale proceeds from pre-confirmation lot sales would be applied to National Bank's secured claim and set a July 26, 2010 deadline for objections to National Bank's calculation of its unsecured claim of $3,625,876. Both Whetstone and the Graves timely filed objections to Whetstone's unsecured claim.

A combined hearing on the Graves' Motion for Reconsideration and on the objections to National Bank's unsecured claim was held on August 23, 2010. At that hearing, National Bank presented evidence regarding the calculation of its claim. Whetstone and the Graves cross-examined National Bank's witness and presented argument. The parties' dispute regarding the calculation of National Bank's unsecured

4

claim centered around whether the Late Fee applied to the Balloon, on whether National Bank was entitled to monthly interest payments after the Loan's maturity, and whether the Late Fee applied to such monthly payments.

At the hearing, the court orally ruled that, as to Whetstone, the confirmation of the Plan set aside the Declaration of Default, and, because the Plan extended the Loan term, no Late Fee was due from Whetstone on the Balloon. The Late Fee could, however, be assessed against all prepetition and pre-confirmation interest payments, including those assessed by National Bank after the Declaration of Default. The court also ruled that interest on any unpaid monthly interest payments accrued at the default rate prepetition and the contract rate postpetition.

The matter remaining to be decided in this Memorandum Decision, therefore, relates to the MPSJ, the Motion for Reconsideration and the Graves' claim that their obligation on the Guaranty has been modified by the confirmation of the Plan.[2] Both sides were given additional time to provide the court with case authority supporting their arguments. Those authorities have been submitted and the matter is ready for decision.

### III. **STATEMENT OF JURISDICTION**

Jurisdiction over Graves' claims objection is proper under 28 U.S.C. § 157(b)(2)(B). The parties have consented to the court's jurisdiction over the MPSJ pursuant to 28 U.S.C. § 157(c)(2).

---

[2] The Graves raised no new evidence or legal arguments in the Motion for Reconsideration and, therefore, the legal analysis for the Motion for Reconsideration is the same as for the MPSJ.

5

## IV. ISSUES

A. Must National Bank foreclose or waive its security interest in the Whetstone Assets before enforcing the Guaranty?

B. Did confirmation of the Plan modify the Guaranty to a guarantee solely of Whetstone's Plan obligations?

C. Is National Bank barred from claiming the Late Fee, as part of the Guaranty obligation, if the Balloon was not an installment payment?

D. Is National Bank barred from claiming monthly interest payments, as part of the Guaranty obligation, after the maturity date of the Loan?

## V. DISCUSSION

1. <u>National Bank Does Not Have to Elect its Remedies Before Obtaining a Judgment on the Guaranty</u>

The Graves contend that ARIZ. REV. STAT. § 33-722 requires National Bank to either foreclose on the Whetstone Assets or waive its security interest in those assets before it can enforce the Guaranty. However, § 33-722 only applies if a lender who holds a deed of trust on non-residential real property elects to judicially foreclose that deed of trust. See <u>Mid Kansas Fed. Sav. and Loan Ass'n v. Dynamic Dev. Co.</u>, 167 Ariz. 122, 126 n.2, 804 P.2d 1310, 1314 (1991). See also <u>Valley Nat'l Bank of Ariz. v. Kolhase</u>, 182 Ariz. 436, 438, 897 P.2d 738, 749 (App. 1995) ([b]anks need not choose between conducting trustee's sale and suing on note). National Bank has stated in its pleadings that it does not intend to judicially foreclose its security interest in

6

the Whetstone Assets. Accordingly, Graves' argument that § 33-722 requires National Bank to elect its remedies fails.

The Graves also argue that, unless National Bank is required to elect its remedies, the Graves' statutory right under ARIZ. REV. STAT. § 12-1566(E) to a credit for the value of the Whetstone Assets, will be rendered meaningless. Section 12-1566(E) provides the Graves with the same credit rights as those available to a judgment debtor under ARIZ. REV. STAT. § 33-814. The court in Kolhase found that a creditor could obtain a judgment for the full amount of an obligation against a judgment debtor and that the amount of the judgment would then be reduced by any subsequent sale of collateral which secured the obligation. 182 Ariz. at 440, 897 P.2d at 742. The Graves, as guarantors, have no greater rights than a judgment debtor and, therefore, there is no requirement under § 33-814 that National Bank waive or foreclose its security interest in the Whetstone Assets before it enforces the Guaranty.

In addition, § 33-814(C) specifically permits actions against guarantors "regardless of whether a trustee's sale is held." See Crown Life Ins. Co. v. Howard, 170 Ariz. 130, 822 P.2d 483 (App. 1991). In Crown Life, as in this case, the guarantors agreed that the lender could enforce the guarantee without regard to whether a trustee's sale was held.[3] In light of such a provision, the Crown Life court found no merit to the argument that a lender must liquidate its security before enforcing the guarantee. 170 Ariz. at 133, 822 P.2d at 484. Furthermore, National Bank has offered to reduce the amount of any Guaranty judgment by the amount of its secured claim. Accordingly,

---

[3] Exhibit 4, paragraph 6 of Repayment Guaranty.

7

there is no evidence that the Graves' rights to a credit for the value of the Whetstone Assets will be rendered meaningless if National Bank obtains a judgment on the Guaranty before it pursues recovery of its collateral.

2. <u>Confirmation of the Plan does not convert the Guaranty into a Guarantee of Performance Under the Plan</u>

Under Arizona law, "the nature and extent of guarantor's liability depends upon the terms of the guaranty contract." Tenent HealthSystem TGH, Inc. v. Silver, 203 Ariz. 217, 219, 52 P.3d 786, 788 (Ariz. 2003). Because the Guaranty states that it is "a guaranty of payment and not of collectability,"[4] it is a payment guarantee which made the Graves jointly and severally liable for the Loan.

Whetstone's obligations for the Loan have been modified and extended by the confirmation of the Plan, but that does not relieve the Graves of their liability on the Guaranty, which is a separate and distinct obligation. 11 U.S.C. § 524(e). See also Star Phoenix Mining Co. v. West Bank One, 147 F.3d 1145, 1147-48 (9th Cir. 1998); In re American Hardwoods, 885 F.2d 621, 626 (9th Cir. 1989).[5]

In addition, paragraph 3 of the Guaranty provides that the Graves are liable for the Loan, notwithstanding "any modification, agreement or stipulation" between Whetstone and National Bank.[6] Because the terms of the Guaranty provide for

---

[4] Exhibit 4, Paragraph 5.

[5] The Graves have cited a number of cases to the court which stand for the proposition that the Plan modified the Loan. The court agrees, but those cases do not hold that modification of a loan under a confirmed plan modifies a guarantee.

[6] Exhibit 4, paragraph 3(a).

8

continuing liability of the Graves regardless of modifications to the Loan, the confirmation of the Plan did not modify the Graves' obligations under the Guaranty.

3. <u>Late Fee on the Balloon Applies to the Guaranty</u>

The Graves argue that, under the terms of the Loan, the Late Fee does not apply to the Balloon, but only to the pre-maturity monthly interest payments. They rely on Section 6(b) of the Secured Promissory Note (Exhibit 2) which provides:

> If any payment of interest and/or principal is not received by the holder hereof when such payment is due, then in addition to the remedies conferred upon the holder hereof pursuant to Paragraph 10 hereof and the other Loan Documents, (i) <u>a late charge of ten percent (10%) of the amount of the installment due and unpaid will be added to the delinquent amount to compensate the holder hereof for the expense of handling the delinquency for any payment past due in excess of ten (10) days</u>, regardless of any notice and cure periods, and (ii) the amount due and unpaid (including, without limitation, the late charge) shall bear interest at the Default Interest Rate, computed from the date on which the amount was due and payable until paid. (emphasis added)

Under Arizona principles of contract interpretation, the provisions of a contract must be read in their entirety in order to effectuate the parties' intent. <u>Tenent HealthSystem TGH, Inc.</u>, 203 Ariz. at 219-20, 52 P.3d at 788-89 <u>citing</u> <u>Taylor v. State Farm Mut. Auto Ins. Co.</u>, 175 Ariz. 148, 854 P.2d 1134 (1993). The first sentence of paragraph 6 provides that the Late Fee applies to any payment of interest and/or <u>principal</u> not received when due. The only payment of principal on the Loan is the Balloon. So regardless of whether the Balloon is an installment payment,[7] paragraph 6 applies to it, otherwise the first sentence of paragraph 6 is rendered meaningless. The

---

[7] As noted in a case cited by the Graves, a payment does not have to be equal to all other payments to be an "installment." <u>Poseidon Dev., Inc. v. Woodland Lane Estates, LLC</u>, 152 Cal. App. 4th 1106, 1113 (App. 2007).

court notes that a finding that National Bank may assess the Late Fee on the Balloon in enforcing the Guaranty may result in the Graves owing more to National Bank than Whetstone. Such a result is permitted under Arizona law. See Provident Nat'l Assurance. Co. v. Sbrocca, 180 Ariz. 464, 466, 885 P.2d 152, 154 (App. 1994).

4. <u>Post-Loan Maturation Monthly Interest Payments</u>

The Graves argue that there could be no default in monthly interest payments after the Loan matured because the Loan does not provide for such payments. In its oral ruling on August 23, 2010, the court found that those payments were an allowed part of National Bank's unsecured claim. The court's ruling was based on the pattern of conduct between National Bank and Whetstone. Commencing in October 2009, Whetstone began making monthly interest payments to National Bank. The Graves, as active participants in the Whetstone Chapter 11, never objected to those payments. Like the other prepetition Loan extensions, modifications and forbearance agreements, the continued accrual of monthly interest payments, post-maturity, was consented to by the Graves. In addition, under paragraph 3(b) of the Guaranty, the Graves agreed that National Bank could apply any payments made by Whetstone as National Bank "may elect."

## **VI. CONCLUSION**

The foregoing constitutes the court's finding of fact and conclusions of law under Rule 7052. National Bank is entitled to judgment on the Guaranty for the full amount of the Loan, plus interest at the default rate and the Late Fee from and after the

10

Declaration of Default. Counsel for National Bank is directed to upload a form of judgment consistent with this decision.

Dated and signed above.

Notice to be sent as indicated below:

Eric Slocum Sparks
ERIC SLOCUM SPARKS PC
110 S Church Ave. #2270
Tucson, AZ 85701
Attorney for Whetstone Development Company
Email: eric@ericslocumsparkspc.com

Sally M. Darcy
McEVOY, DANIELS & DARCY, P.C.
Camp Lowell Corporate Center
4560 East Camp Lowell Drive
Tucson, AZ 85712
Attorneys for Ernest and Mary Graves
Email: darcysm@aol.com

Jonathan M. Saffer
SNELL & WILMER L.L.P.
One South Church Ave., Suite 1500
Tucson, AZ 85701-1630
Attorneys for National Bank of Arizona

Christopher J Pattock
OFFICE OF THE U.S. TRUSTEE
230 N. First Ave., #204
Phoenix, AZ 85003-1706
Email: Christopher.J.Pattock@usdoj.gov

Terry Bannon
Deputy County Attorney
COCHISE COUNTY ATTORNEY
P.O. Box Drawer CA
Bisbee, AZ 85603
Email: tbannon@cochise.az.gov